No. 10-16-00044-CV


IN THE COURT OF APPEALS FOR THE
TENTH JUDICIAL DISTRICT OF TEXAS

---

Karen Hall, Appellant

v.

City of Bryan, Appellee

---

Brief of Karen Hall


On Appeal from judgment
in cause number 12-000391-CV-272
In 272nd District Court
Hon. Travis B. Bryan, Presiding


Oral Argument Requested

Karen Hall, *pro se*
P.O. Box 13
Kurten, TX 77862
(979)589-2920

# IDENTITY OF PARTIES AND COUNCIL

Appellant:               Karen Hall

          Counsel         Karen Hall, *pro se*
P.O. Box 13
Kurten, TX 77862

Appellee:              City of Bryan

          Counsel         Ryan Henry
1380 Pantheon Way, Suite 110
San Antonio, TX 78232

          Counsel         Janis Hampton
P.O. Box 1000
Bryan, TX 77805

          Counsel         Artin DerOhanian
1380 Pantheon Way, Suite 110
San Antonio, TX 78232

# TABLE OF CONTENTS

Identity of Parties and Counsel.................................................................ii

Table of Contents.................................................................................iii

Index of Authorities..............................................................................v

Oral Argument Requested......................................................................1

Statement of the Case...........................................................................2

Points of Error.....................................................................................2

Statement of Facts................................................................................3

Summary of the Argument.....................................................................8

Argument............................................................................................9

      Point 1: The trial court erred in granting the City's Motion for Summary

      Judgment as supplemented based on *res judicata*.................................9

      Point 2: The trial court erred in granting the City's Motion for Summary

      Judgment as supplemented based on collateral estoppel.........................13

      Point 3: The trial court erred in granting the City's Motion for Summary

      Judgment as supplemented based on a statute of limitations.....................15

      Point 4: The trial court erred in denying appellant's Motion for Summary

      Judgment............................................................................................18

Conclusion..................................................................................28

Prayer.......................................................................................30

Certificate of Service.................................................................31

Appendix...................................................................................32

Appendix - Supplemental.................................bound separately

iv

# INDEX OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Gravis,* 470 S.W.2d 639 (Tex. 1971)..................................12

*Alexander Oil v. City of Seguin,* 823 S.W.2d 312 (Tex. App.—San Antonio 1989)..................................................................................................16

*Barr v. Resolution Trust Corp.,* 837 S.W.2d 628 (Tex.1992)..........................9, 10

*Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 818 (Tex. 1984).......................14

*City of Celina v. City of Pilot Point,* 2009 Tex. App. LEXIS 6932, *11, 2009 WL 2750978 (Tex. App. Fort Worth Aug. 31, 2009, pet. ref'd)..................................16

*City of Corpus Christi v. Taylor,* 126 SW 3d 725 (Tex. App.—Corpus Christi 2004)...................................................................................................13, 17

*City of Dallas v. D.R. Horton,* No. 05-14-01414-CV (Tex. App.---Dallas, July 10, 2015). Pet. filed..........................................................................................17

*City of Heath v. King,* 665 S.W.2d 133 (Tex. App. - Dallas 1983, no writ).......1, 26

*City of Lubbock v. Stubbs,* 327 S.W.2d 411, 414 (Tex. 1959)......................10, 12

*City of Murphy v. City of Parker,* 932 S.W.2d 479 (Tex. 1995)..........................16

*Clear Lake City Water Auth. v. Clear Lake Util.,* 549 SW 2d 390 (Tex. 1977).....13

*Cowling v. Colligan,* 312 S.W.2d 947 (Tex. 1958)..............................................10

*Creative Thinking Etc. v. Creative Thinking,* 74 SW 3d 511 (Tex. App.—Corpus Christi 2002)..........................................................................................26

*Eagle Properties, Ltd. v. Scharbauer*, 807 SW 2d 722 (Tex. 1990)........................14

*Fort Worth Stockyards Co. v. Brown,* 161 S.W.2d 549 (Tex. App.---Fort Worth 1977)........................................................................................................................12

*Franklin v. Rainey,* 556 S.W.2d 583 (Tex. App.---Dallas 1977)........................12

*Godde v. Wood,* 509 SW 2d 441 (Tex. App.---Corpus Christi 1974)....................17

*Hall v. City of Bryan*, No. 10-05-00417-CV, (Tex. App.—Waco 2006)....3, 9, 10, ........................................................................................................................13

*Hall v. City of Bryan*, No. 10-10-00403-CV, (Tex. App.—Waco 2011)..............4, 9

*Hall v. City of Bryan*, No. 10-12-00248-CV, (Tex. App.—Waco 2014)........5, 9, 25

*Hudspeth v. Hudspeth*, 673 SW 2d 252 (Tex. App.—San Antonio 1984)............12

*Marino v. State Farm Fire & Casualty Ins. Co.*, 787 S.W.2d 949 (Tex. 1990) ........................................................................................................................10, 12

*Poe v. The City of Lago Vista* Cause No. D-1-GN-05-002184, 345th District Travis County (August 2, 2006)........................................................................1, 27

*Powell v. Powell*, 703 S.W.2d 464 (Tex. App. 1985)........................................12

*Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 679 (Tex. 1982)................................9

*Reynolds v. Murphy*, 266 SW 3d 147 (Tex. App.—Fort Worth 2008)..................26

*Rolling Lands v. Northwest Airport*, 111 SW 3d 193, 194 (Tex. App.—Texarkana 2003)........................................................................................................................12

*Simulis, LLC v. Gen. Elec. Capital Corp.,* 392 SW 3d 735 (Tex. App.—Houston 14th 2011)........................................................................................................26

*Sysco Food Services, Inc. v. Trapnell*, 890 SW 2d 801 (Tex. 1994)......................14

*Texas A&M Univ. Sys. v. Koseoglu,* 233 S.W.3d 839 (Tex. 2007)......................26

**Statutes**

TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (Vernon 2002)...........................16

TEX. LOC. GOV'T CODE §43.056.....................................................1, 3, 20, 21, 27

TEX. LOC. GOV'T CODE §43.141.............................................................passim

TEX. LOC. GOV'T CODE §43.148.............................................................1, 8, 27, 30

TEX. LOC. GOV'T CODE §43.901...............................................................6, 15, 16

TEX. LOC. GOV'T CODE §51.003.....................................................................6

Tex. Gov't Code §311.011......................................................................18

Tex. Gov't Code §311.016......................................................................18

Tex. Gov't Code §311.023......................................................................18

Tex. Gov't Code §312.005......................................................................19

Tex. Gov't Code §312.006......................................................................18

Tex. Rev. Civ. Stat. Art 970a (Municipal Annexation Act)..............1, 19, 20, 21, 28

## ORAL ARGUMENT REQUESTED

This case raises significant issues related to a municipality's obligation regarding the provision of services to newly annexed areas. From 1963 with the passage of the Municipal Annexation Act (Appendix B) to the current versions of TEX. LOC. GOV'T CODE §43.056 titled Provision of Services to Annexed Area and TEX. LOC. GOV'T CODE §43.141 titled Disannexation For Failure To Provide Services, the Legislature's intent is clear; similar services for similar areas.

Since the recodification of TEX. REV. CIV. STAT. article 970a into §43.056 and §43.141, no other case has been appealed making this a case of first impression. In *City of Heath v. King*, 665 S.W.2d 133 (Tex. App. - Dallas 1983, no writ) (1 CR 10), the Municipal Annexation Act was the controlling statute. In *Poe v. The City of Lago Vista* Cause No. D-1-GN-05-002184, 345th District Travis County (August 2, 2006), the case was not appealed by the City of Lago Vista. (3 CR 1089) (3 CR 1303-1307) (1 RR 27-29). No appellate court has ever ruled on the refund of property taxes and fees pursuant to TEX. LOC. GOV'T CODE §43.148.

The inclusion of oral arguments will significantly aid the decision of this Court.

1

## STATEMENT OF THE CASE

Appellant filed suit seeking disannexation of the approximately 105 acres labeled 6A-1 and commonly called Hwy. 21 East from the City of Bryan because the City failed to provide, in good faith or under its service plan, full municipal services pursuant to TEX. LOC. GOV'T CODE §43.141. The trial court granted the City of Bryan's Motion for Summary Judgment as supplemented and denied Hall's Second Amended Motion for Summary Judgment.

## POINTS OF ERROR

**Point 1: The trial court erred in granting the City's Motion for Summary Judgment as supplemented based on *res judicata*.**

**Point 2: The trial court erred in granting the City's Motion for Summary Judgment as supplemented based on collateral estoppel.**

**Point 3: The trial court erred in granting the City's Motion for Summary Judgment as supplemented based on a statute of limitations.**

**Point 4: The trial court erred in denying appellant's Motion for Summary Judgment.**

2

## STATEMENT OF FACTS

On July 27, 1999 the City of Bryan (hereinafter referred to as "City" or "Bryan") annexed by Ordinance 1175 and pursuant to TEX. LOC. GOV'T CODE §43.056 [1], nine (9) separate areas comprising over 6000 acres. (1 CR 7). April 2004 – almost five years after being annexed – the majority of the qualified voters of the approximately 105 acres labeled Area 6A-1, commonly called Hwy. 21 East ("Hwy. 21 East" or "Area" hereinafter) filed for disannexation under TEX. LOC. GOV'T CODE §43.141. After 60 days passed without the City's taking action on the petition, Hall, as one of the signers of the petition, filed suit for disannexation. (1 CR 9). The trial court granted the City's Motion for Summary Judgment. The case was appealed. *Hall v. City of Bryan*, No. 10-05-0417-CV, 2006 WL 3438537 (Tex.App.—Waco 2006, pet. denied) (hereinafter referred to as *Hall I*). This court affirmed the trial court's ruling stating that "Hall lacked standing" to complain about the service plan.

A service plan is valid for ten (10) years unless renewed. §43.056 (i). The City did not renew the service plan so it expired July 27, 2009. On September 1,

---

[1] Because this area was annexed prior to the September 1999 changes to TEX. LOC. GOV'T CODE §43.056 titled Provision of Services to Annexed Area, the time for providing services is 4 ½ years instead of the 2 ½ years listed in the current version. (Appendix C).

3

2009, appellant filed another petition signed by the majority of the qualified voters of Area 6A-1 requesting disannexation under §43.141. (1 CR 9). On October 27, 2009, the City of Bryan denied the request and appellant filed suit seeking disannexation. The City filed a combined Plea to the Jurisdiction and Motion for Summary Judgment on multiple grounds. The trial court granted the City's Plea to the Jurisdiction and Motion for Summary Judgment. The case was appealed. *Hall v. City of Bryan*, No. 10-10-00403-CV, 2011 LEXIS 8038 (Tex.App.—Waco 2006, pet. denied). (hereinafter referred to as *Hall II*). This court affirmed the trial court's ruling stating that appellant's complaints amounted to "an attack on the validity of the annexation." "Accordingly, ...she has no standing." *Id*. The other issues raised in the City's Motion for Summary Judgment were not addressed by this court because of its finding that the trial court lacked jurisdiction.

The Opinion did, however, give clear direction to an individual seeking disannexation when it said, "a complaint that the city has failed to provide services to specific property that was annexed, under a service plan or in good faith, gives that individual property owner standing to sue the city to have the property disannexed. TEX. LOC. GOV'T CODE ANN. § 43.141 (West 2008)." (*Hall II*).

On February 13, 2012 appellant again filed for disannexation. *Hall v. City*

4

*of Bryan*, No. 10-12-00248-CV, (Tex. App.—Waco 2014). (hereinafter referred to as *Hall III*). (1 CR 7) (3 CR 1085) (1 RR 67-68). The grounds stated in Plaintiff's First Amended Petition for Disannexation are limited to the City's failure to provide, in good faith or under its service plan, full municipal services to Area 6A-1 pursuant to §43.141. (1 CR 7). Area 6A-1 has been annexed over sixteen (16) years and still lacks sanitary sewer, fire hydrants, adequate police patrols. As of February 2012 not one shovel-full of dirt had been turned. There had been no "good faith" effort made to provide this area with full municipal services similar to that currently enjoyed by citizens living within the city's full-service boundaries with similar land use and population density. Hwy. 21 E. is a fully developed area similar to many other areas within Bryan's full-purpose boundaries. It is undisputed that full municipal services were not provided as of the filing of *Hall III* (February 13, 2012) and therefore, this area meets the requirements for disannexation.

The City filed an answer which sought to assert sovereign and governmental immunity, official and qualified immunity, *res judicata*, collateral estoppel, statute of limitations, and contractual obligations. The City then filed a combined Plea to the Jurisdiction and Motion for Summary Judgment. The Plea to the Jurisdiction

5

inaccurately claimed that the appellant's disannexation suit was an attack on the validity of the City's annexation. The plea also erroneously asserted that appellant's claim was for "free" services. Appellant's claim is that the City of Bryan failed to provide services to specific property that was annexed, under a service plan or in good faith. The City's Summary Judgment argues *res judicata*, collateral estoppel, statute of limitations, *quo warranto*, and sovereign immunity. Appellant's response to the City's Plea to the Jurisdiction and Motion for Summary Judgment addressed each of the grounds asserted by the City.

May 7, 2012 – four days prior to the hearing on the City's Plea to the Jurisdiction motion – the City filed a first supplement to its jurisdiction plea asserting sovereign immunity, *quo warranto*, *res judicata*, collateral estoppel, statute of limitations, the Municipal Validation Act (TEX. LOC. GOV'T CODE §51.003), and presumed consent (TEX. LOC. GOV'T CODE §43.901). (2 CR at 463, 469-474). The City also asserted that it is not responsible for providing services to annexed areas.

On May 10, 2012, appellant filed her response to the City's first supplement to its plea to the jurisdiction addressing each of the specific claims made by the City. May 11, 2012 the trial court held a hearing on the City's Plea to the

6

Jurisdiction and the Defendant City of Bryan's First Supplement to Defendant's Plea to the Jurisdiction The trial court granted the City's Plea to the Jurisdiction. That ruling was appealed. After oral arguments, this court issued an Opinion on July 24, 2014, remanding the case to the trial court on one point of error; the lack of "regular and routine police patrols" required by the service plan.

Both the City and Hall filed Motions for Summary Judgment. (1 CR 46-703) (3 CR 1084-1327). After a hearing on December 22, 2015, the trial court granted the City's Motion for Summary Judgment as supplemented and denied Hall's Motion for Summary Judgment. (3 CR 1623-1627). Notice of Appeal was timely filed by appellant on February 5, 2016. (3 CR 1637-1638).

## SUMMARY OF THE ARGUMENT

The trial court erred in granting the City of Bryan's Motion for Summary Judgment. It is undisputed that as of the filing date, February 13, 2012, there were no wastewater facilities (sanitary sewer) or fire hydrants (except those at the City owned Coulter Airfield) in Area 6A-1. Hours of video and personal observation attest that the Area lacks regular and routine preventive patrols. Legislative intent and statutory history shows that when a city annexes an area, it is required to provide that area with comparable services to similar areas of the city. Basically, similar services for similar areas.

The primary issue in this appeal is whether a city may ignore nearly 50 years of legislative efforts to prevent cities from annexing land, imposing municipal taxes on the landowners, and failing to provide municipal services comparable to other parts of the city. Analysis of the governing statute, Tex. Gov't Code §43.141, shows the Legislature's intent that a citizen may seek disannexation when services are not timely provided. Because the City of Bryan has monumentally failed to provide in good faith the municipal services required by the service plan, appellant is requesting that Area 6A-1 be disannexed from the City of Bryan pursuant to Tex. Gov't Code §43.141 and that all taxes and fees be refunded pursuant to Tex. Gov't Code §43.148.

**Point 1: The trial court erred in granting the City's Motion for Summary Judgment as supplemented based on *res judicata*.**

The City has raised the issue of *res judicata* citing this Court's ruling in *Hall I (Hall v. City of Bryan*, No. 10-05-00417-CV, (Tex. App.—Waco 2006)). (1 CR 55). Broadly speaking, *res judicata* is the generic term for a group of related concepts concerning the conclusive effects given final judgments. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 628 (Tex.1992). *See Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 679 (Tex. 1982). In both *Hall II* (*Hall v. City of Bryan*, No. 10-10-00403-CV, (Tex. App.—Waco 2011)) and *Hall III (Hall v. City of Bryan*, No. 10-12-00248-CV, (Tex. App.—Waco 2014)), this Court has treated the service plan as a continuous contract. The City concurs in its Motion for Summary Judgment Sec. E. titled <u>Alternatively, the City asserts it currently provides proper services and has always done so</u>. (1 CR 61) Black's defines a "continuing contract" as, "a contract calling for periodic performances over a space of time." BLACK'S LAW DICTIONARY, 321 (Sixth Ed. 1990). The annexation service plan is not a one time event such as a botched surgery or a car accident but the provision of services for as long as the area remains part of the city. The case

before this Court was filed in February 13, 2012 (1 CR 7) (3 CR 1085) (1 RR 67-68) and it is the actions or lack of actions at that time that constitutes the basis for this lawsuit. It is a snapshop of Area 6A-1 at that time. This is not a relitigation of *Hall I* as put forth by the City.

*Res judicata* is not a bar when a sequence of events occurs across time, space, origin, or motivation. *Barr*, 837 S.W.2d at 631. New facts confer new rights and create a new cause of action. *Marino v. State Farm Fire & Casualty Ins. Co.*, 787 S.W.2d 949 (Tex. 1990). A judgment in one suit will not operate as *res judicata* to a subsequent suit on the same question between the same parties "where, in the interval, the facts have changed, or new facts have occurred which may alter the legal rights or relations of the parties." *Id.* at 949-950. *See City of Lubbock v. Stubbs,* 327 S.W.2d 411, 414 (Tex. 1959). "The judgment is *res adjudicata* only of present and not of future conditions." *Cowling v. Colligan,* 312 S.W.2d 947 (Tex. 1958).

In *Hall I*, this Court's opinion stated that the City had "complied with the service plan as written." The Opinion then quotes the City's policy of extending municipal services with "...developer or property owner participation." That ruling was based on the affidavits of Kevin Russell, Director of Development

10

Services, who said that it is city policy to require developers or property owners to pay for wastewater line extensions, the affidavit of Michael Donoho, Bryan Fire Chief, who said it is city policy that "property owners and developers are responsible for installation of fire hydrants," and the affidavit of Bryan Police Chief Michael Strope who said that the City could provide police protection and services. (1 CR 52) Chief Strope never addressed the question of " regular and routine police patrols" as required by the service plan.

Assuming the City's policy in 2004 was that the developers and property owners pay for capital improvements, evidence obtained from Discovery shows that the City's policy has changed. (3 CR 1134-1256). Area 6A-1 is a fully developed mix of residential and businesses. The projects listed are only a small sample of the Capital Improvement Projects (CIPs) where sewer (CIP numbers starting with 411) and/or water with fire hydrants (CIP numbers starting with 611) have been installed by the City and paid for with bond funds or other monies controlled by the City of Bryan. (Appendix D, E).

It is a "...well-accepted rule that *res judicata* is not a defense in a subsequent action if there has been a change in the material facts, the applicable statutory law, or the decisional law between the first judgment and the second suit. The rationale

11

underlying this rule is that no judgment can affect subsequently arising rights and duties." *Marino*, 787 S.W.2d 9 at 950. "Estoppel by judgment extends only to facts in issue as they existed at the time the judgment was rendered, and **does not prevent a re-examination of the same question between the same parties, where, in the interval, the facts have changed, or new facts have occurred which may alter the legal rights or relations of the parties.**" (emphasis added). *City of Lubbock*, 327 S.W.2d at 414. *See Hudspeth v. Hudspeth*, 673 SW 2d 252 (Tex. App.—San Antonio 1984).

*Res judicata* will operate as a bar only to matters *actually* raised or that *could have* been raised in the previous litigation. *Powell v. Powell*, 703 S.W.2d 464 (Tex. App. 1985). *See Abbott Laboratories v. Gravis*, 470 S.W.2d 639 (Tex. 1971). As to matters which arise subsequently, the prior judgment will not be *res judicata. Fort Worth Stockyards Co. v. Brown*, 161 S.W.2d 549 (Tex. App.---Fort Worth 1977). *See Franklin v. Rainey*, 556 S.W.2d 583 (Tex. App.---Dallas 1977). The issues raised in this suit are based on significant changes of material facts between the first suit in 2004 and the filing of this suit in 2012. The changes center around the City's policy regarding sewer and fire hydrant construction.

*Res judicata* does not apply in dealing with a continuing contract when the current suit "arises out of a separate breach." *Rolling Lands v. Northwest Airport,*

12

111 SW 3d 193, 194 (Tex. App.—Texarkana 2003). The service plan is not a document to be followed for one day but imposes duties for the entire time the area remains a part of the City. It is classified as a "continuous contract." *City of Corpus Christi v. Taylor*, 126 SW 3d 725 (Tex. App.—Corpus Christi 2004). *See Clear Lake City Water Auth. v. Clear Lake Util.*, 549 SW 2d 390 (Tex. 1977). It can only be terminated by the City of Bryan and only then by disannexing the area. Until such time, the obligations imposed by the service plan remain in effect. If the City fails to perform those obligations, citizens can petition for disannexation. This Court's ruling in 2004 does not exempt the City from fulfilling those obligations in subsequent years.

*Res judicata* (claim preclusion) is not a bar to this disannexation suit. The trial court erred in granting summary judgment for the City based on *res judicata*.

**Point 2: The trial court erred in granting the City's Motion for Summary Judgment as supplemented based on collateral estoppel.**

The City raises the defense of collateral estoppel again citing this Court's ruling in *Hall I*. (3 CR 58). A party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the

13

judgment in the first action, and (3) the parties were cast as adversaries in the first action. *Sysco Food Services, Inc. v. Trapnell*, 890 SW 2d 801 (Tex. 1994). *See Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 818 (Tex. 1984). Under state law, collateral estoppel only precludes the relitigation of identical issues of fact or law which were actually litigated and essential to the prior judgment. *Eagle Properties, Ltd. v. Scharbauer*, 807 SW 2d 722 (Tex. 1990). The determining issue before this court in 2004 was the City's claim that it complied with the service plan because it followed City policy to have developers or property owners pay for services. That policy has changed.

For collateral estoppel to bar relitigation of an issue, that issue must have been "necessarily determined" in the prior litigation. *Id.* The capital improvement policy no longer requires only developers or property owners to pay for wastewater line extensions and to be responsible for the installation of fire hydrants. Discovery evidence clearly shows areas similar to Area 6A-1 that have sewer and fire hydrants installed and paid for with bond funds or other City controlled monies. Area 6A-1 is being treated differently from similar areas of the City. This conflicts with the service plan requirement that, "Under this plan, the City of Bryan will provide the newly annexed areas with the same type, kind and

14

quality of services currently enjoyed by the citizens of Bryan who reside in areas with similar physical and development characteristics."

In order to prevail under collateral estoppel, the case must have been "fairly and fully litigated." This is not a retrial of the facts of 2004 but a trial of the facts in 2012. Collateral estoppel cannot be applied to a case when there is a change of material facts. Because the service plan is a continuous contract, each failure confers new rights. The same arguments and cases cited above in *res judicata* establishing new facts conferring new rights and creating a new cause of action are incorporated here by reference.

Collateral estoppel (issue preclusion) is not a bar to this disannexation suit. The trial court erred in granting summary judgment for the City based on collateral estoppel.

**Point 3: The trial court erred in granting the City's Motion for Summary Judgment as supplemented based on a statute of limitations.**

The City raised a statute of limitations defense citing TEX. LOC. GOV'T CODE §43.901. (3 CR 59). The wording of this statute, although not exactly the model of clarity, makes it inappropriate to apply to this or any disannexation suit. By reading the bill analysis it becomes very clear that it **only applies to**

**challenging an ordinance. Challenges to an ordinance can only be done by a municipality or an individual when the error is *ab initio*.** (3 CR 1602-1603). The City of Bryan made no such error. A copy of §43.901 and the bill analysis is attached. [1] (Appendix F, G). An excellent explanation of *ab initio* errors can be found in the Court of Appeals ruling in *Alexander Oil v. City of Seguin*, 823 S.W.2d 312 (Tex. App.—San Antonio 1989).

This explains why the only two cases offered to the court—*City of Murphy v. City of Parker*, 932 S.W.2d 479 (Tex. 1995) and *City of Celina v. City of Pilot Point*, 2009 Tex. App. LEXIS 6932, *11, 2009 WL 2750978 (Tex. App. Fort Worth Aug. 31, 2009, pet. ref'd)—deal with one municipality annexing into another municipality's ETJ. An *ab initio* error. Exactly the purpose of §43.901. A disannexation suit brought under § 43.141 is not the same as a challenge to the actual annexation ordinance. It is very misleading to cite §43.901 as a limitation statute in a disannexation suit.

The statute of limitations for contracts is four years. *See* Tex. Civ. Prac. & Rem. Code ANN. § 16.004 (Vernon 2002). However, in a contract that has continuing obligations, the following rule applies:

---

[1] Tex. H.B. 1264, 77th Leg., R.S. (2001) through Legislative Reference Library of Texas (http://www.lrl.state.tx.us/).

Limitations begins to run on a continuing contract at the earlier of the following: (1) when the work [under the contract] is complete; (2) when the contract is terminated in accordance with its terms; or (3) when the contract is anticipatorily repudiated by one party and this repudiation is adopted by the other party. *City of Corpus Christi*, 126 SW 3d at 725.

Because the obligations imposed by the service plan are still in effect and the service plan contract has not been terminated or repudiated, no statute of limitations applies.

> Where a claim for work, labor, or materials performed or furnished is the outgrowth of an entire contract for continuous work, labor or materials (until the work project has been completed), the claim will be treated and considered as an entire demand and limitations will not commence to run until the contract has been finished. *Godde v. Wood*, 509 SW 2d 441 (Tex. App.---Corpus Christi 1974).

Also, there does not appear to be any statute of limitations on filing a disannexation suit. In one case, the area was annexed in 1971 and the disannexation suit was filed in 2013. *City of Dallas v. D.R. Horton*, No. 05-14-01414-CV (Tex. App.---Dallas, July 10, 2015). Pet. filed.

The statute of limitations is not a bar to this disannexation suit. The trial court erred in granting summary judgment for the City based on any statute of limitations.

17

**Point 4: The trial court erred in denying appellant's Motion for Summary Judgment.**

### Code Construction Act

The Texas Government Code sections were written to assist courts in determining legislative intent. Plaintiff asks this Court to take specific notice of §312.006(a), §311.011(a), §311.016 (1-3), §311.023(1-7), and §312.005. (3 CR 1308).

> Tex. Gov't Code §312.006. LIBERAL CONSTRUCTION. (a) The Revised Statutes are the law of this state and shall be liberally construed to achieve their purpose and to promote justice.

> Tex. Gov't Code §311.011. COMMON AND TECHNICAL USAGE OF WORDS. (a) Words and phrases shall be read in context and construed according to the rules of grammar and common usage.

> Tex. Gov't Code §311.016. "MAY," "SHALL," "MUST," ETC.. The following constructions apply unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute:
> (1) "May" creates discretionary authority or grants permission or a power.
> (2) "Shall" imposes a duty.
> (3) "Must" creates or recognizes a condition precedent

> Tex. Gov't Code §311.023. STATUTE CONSTRUCTION AIDS. In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:
> (1) object sought to be attained;
> (2) circumstances under which the statute was enacted;

18

(3) legislative history;
(4) common law or former statutory provisions, including laws on the same or similar subjects;
(5) consequences of a particular construction;
(6) administrative construction of the statute; and
(7) title (caption), preamble, and emergency provision

Tex. Gov't Code §312.005. LEGISLATIVE INTENT. In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy.

In examining the history of the annexation statutes, there is virtually no "old law" because prior to 1912, only the Texas Legislature had the legal authority to expand a city's boundaries through annexation. With the passage of the Constitution Amendment Article XI section 5 creating the Home Rule Amendment, cities obtained to power of annexation with few restrictions. Essentially, between 1912 until the passage of the 1963 Municipal Annexation Act, there was still no "old law". There was, however, a great deal of "the evil" as cities annexed enormous amounts of land with little or no regard to providing municipal services. "The remedy" came in 1963 with the passage of the Municipal Annexation Act. The Act required that an annexing municipality provide certain services to the residents of the annexed area within three years or face the possibility of having to disannex the area. The legislative intent that

19

services be provided to newly annexed areas is still in effect today under TEX. LOC. GOV'T CODE §43.056 and TEX. LOC. GOV'T CODE §43.141.

### *Legislative History of TEX. LOC. GOV'T CODES §43.056 and §43.141*

In 1912 a constitutional amendment created home rule municipalities.[2] This amendment allowed cities to annex without legislative approval.[3] In 1963, the 58th Texas Legislature enacted the Municipal Annexation Act (hereinafter referred to as "Act").[4] The Act regulated numerous aspects of municipal annexation including the requirement to furnish services. The Act also allowed areas to be disannexed when those services were not timely provided.

In 1981 the 67th Legislature amended the Act by passing House Bill ("HB" hereinafter) 1952.[5] ( Appendix H). This amendment added the requirement that cities must write a service plan. The legislative intent of the service plan is to force

---

[2] TEX. CONST. art. XI, §5.

[3] Texas House of Representatives, House Committee on Land and Resource Management, Interim Report, 80TH Leg., R.S. (May 5, 2008), p. 86 through Legislative Reference Library of Texas (http://www.lrl.state.tx.us/).

[4] Municipal Annexation Act, Vernon 970a, 1963. Certification attached.

[5] Tex. H.B. 1952, 67th Leg., R.S. (1981). Certification attached.

[6] House Study Group, Bill Analysis, Tex. H.B. 1952, 67th Leg., R.S. (1981) through Legislative Reference Library of Texas (http://www.lrl.state.tx.us/).

cities to list the required services and then provide those services.[6] ( Appendix I).

The Intergovernmental Affairs Committee Bill Analysis for HB 1952 states that

"...failure to provide...governmental and proprietary services to an annexed

territory is grounds for disannexation."[7] Clearly, the Legislature intended

disannexation to be the remedy when a municipality fails to provide all

legislatively required services.

In 1987 and 1989, the 70th and 71st legislative sessions respectively,

recodified statutes governing annexation including Vernon's Texas Civil Statute

970a.[8] (Appendix J). In the old civil statute labeled CITIES, TOWNS and

VILLAGES, Vernon's Texas Civil Statute 970a contained both the annexation and

disannexation requirements. The 70th Legislature first created the Local

Government Code Chapter 43 title MUNICIPAL ANNEXATION. The service

requirements were then placed in the newly formed TEX. LOC. GOV'T CODE

§43.056 titled Provision of Services to Annexed Area. The disannexation

requirements were placed in the newly formed Tex. Loc. Gov't Code §43.141

titled Disannexation For Failure To Provide Services. (3 CR 1091) (3 CR 1324-

1327).

---

[7] Intergovernmental Affairs Committee, Bill Analysis, Tex. H.B. 1952, 67th Leg., R.S. (1981) through Legislative Reference Library of Texas (http://www.lrl.state.tx.us/).

[8] Tex. S.B. 896, 70th Leg., R.S. (1987) through Legislative Reference Library of Texas (http://www.lrl.state.tx.us/).

*City's Failure To Meet Service Plan Requirements*

A. Sanitary Sewer

The City of Bryan's service plan states on page 1, "Under this plan, the City of Bryan will provide the newly annexed areas with the same type, kind and quality of services currently enjoyed by the citizens of Bryan who reside in areas with similar physical and development characteristics." (Appendix K). Information obtained from a Discovery Request shows many similar areas within the Bryan city limits that enjoy access to sewer lines that were installed by the City and paid for with either bond funds or other City controlled monies. (3 CR 1134-1256). This occurred both prior to 2004 and after 2004.

The service plan, under Capital Improvements states on page 4, "Within two years after the effective date of annexation, the City is also obligated to acquire or begin constructing any additional capital improvements that are necessary to provide the required levels of service in the annexed areas. Such acquisition or construction must be substantially completed within four-and-one-half years after the annexation...." Basically, similar services for similar areas. Area 6A-1 is a fully developed mixed use area of residents and businesses and is similar to numerous other areas of the city.

22

The placement of sewer lines throughout the City is shown on a map. (3 CR 1265). (Appendix L). Sewer projects are identified with a 411 CIP (Capital Improvement Project) number. (3 CR 1134-1256). (Appendix D).

B. Fire Hydrants

Besides the general "similar services for similar areas" statement in the service plan, the requirements for fire hydrants is more specific. Bryan's service plan states on page 2, "Immediately upon annexation the City of Bryan will provide fire suppression comparable to similar areas in the rest of the City." Area 6A-1 does not have fire hydrants (except those at the City owned Coulter Airfield). (3 CR 1590-1592). Information obtained from Discovery shows many similar areas within the Bryan city limits that have access to fire hydrants that were installed by the City and paid for with either bond funds or other City controlled monies. This occurred both prior to 2004 and after 2004.

The placement of fire hydrants throughout the City is shown on a map. (3 CR 1264). (Appendix M). Water line projects with fire hydrants are identified with a 611 CIP (Capital Improvement Project) number. (3 CR 1134-1256). (Appendix E).

C. Police Patrols

On page 2 of Bryan's service plan, it states, "Immediately upon annexation, the City of Bryan Police Department will provide regular and routine preventive patrols...." (1 CR 20-25) (3 CR 1293-1298). (Appendix K). In 2005 one hundred thirty (130) continuous hours of video recordings on a side road in Area 6A-1 shows only one Bryan police car. (3 CR 1086) (3 CR 1258-1263) (1 RR 14-16). One patrol car every 130 hours is not "regular and routine preventive patrols." A 2-lane side street directly off Highway 21was chosen because Highway 21 is a four-lane 70 mph highway with a left turn lane. It is impossible to view all vehicles in all lanes as they pass in front of the camera. Appellant made the assumption that any patrol car on Hwy. 21 would also patrol the side streets.

Lieutenant Patterson states in his affidavit that, "Highway 21 has a consistent police presence with patrol officers driving different sections of Highway 21 multiple times per day." (3 CR 1585-1587). This statement is controverted by one hundred (100) hours (various days/times) of personal observation by several different individuals (backed by video recordings) at 6111 Hwy. 21 E. in Area 6A-1 in October 2015. Only one Bryan police car was observed during that time. (3 CR 1260-1263) (1 RR 14-16). A chart listing all law

24

enforcement vehicles observed with the days, times, and observer's name is attached. (Appendix N). Each observer signed an affidavit stating the day and time any law enforcement vehicle (sheriff, DPS, constable, or Bryan PD) was observed. (3 CR 1260-1263) (3 CR 1274-1286). When this evidence is added to the 130 continuous hours of video recordings in 2005, it proves a consistent lack of "regular and routine preventive patrols."

### Amended Pleadings Allowed

The City challenges appellant's amended Petition and her Motion for Summary Judgment for raising issues besides police patrols. The City's Motion for Summary Judgment states, "Essentially, the opinion [*Hall III*] holds this court has no jurisdiction to hear any of Ms. Hall's claims, save the police services claim. All such claims must be dismissed." (1CR 63). On remand, appellant is not limited to the single issue of police patrols but can amend her pleadings to include other issues. In *Hall v. City of Bryan*, No. 10-12-00248-CV (Tex. App.—Waco 2014), at footnote 5, the 10th Court Opinion states "...our holding does not necessarily mean there are no other claims that Hall can pursue in this proceeding by amending her petition."

There are numerous instances when a higher court has issued instructions

25

that a pleading may be amended. "A plaintiff deserves 'a reasonable opportunity to amend' pleadings unless the pleadings demonstrate incurable defects or negate the existence of jurisdiction." *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 839 (Tex. 2007). Unless the opinion includes limiting language, appellant is "free to amend its pleadings to **add new claims**." *Simulis, LLC v. Gen. Elec. Capital Corp.*, 392 SW 3d 735 (Tex. App.—Houston 14ᵗʰ 2011). Emphasis added. "[The] court's opinion and mandate did not prevent appellant from amending its pleadings on remand to add new causes of action not substantially the same as those originally considered on appeal...." *Id.* This Court's opinion and mandate did not prevent appellant from amending its pleading to add new causes of action following remand. *Creative Thinking Etc. v. Creative Thinking*, 74 SW 3d 511 (Tex. App.—Corpus Christi 2002). *See Reynolds v. Murphy*, 266 SW 3d 147 (Tex. App.—Fort Worth 2008).

Therefore, the City is in error in stating that Hall is limited, on appeal, to the issue of police patrols.

### Examples of Other Disannexations

Directly on point is *City of Heath v. King*, 665 S.W.2d 133 (Tex. App. - Dallas 1983, no writ). (1 CR 10) (3 CR 1088) (1 RR 26-27). In *Heath* the

26

Appellate Court affirmed that the City of Heath should disannex the five tracts of land pursuant to TEX. REV. CIV. STAT. article 970a § 10 [older version of TEX. LOC. GOV'T CODE §43.141] because "the city failed to furnish services to the five areas in question comparable to services furnished other areas of the city with similar characteristics of topography, patterns of land utilization, and population density...." (3 CR 1088) (1 RR 26-27). The Refund of Taxes statute TEX. LOC. GOV'T CODE §43.148—effective date September 1, 2000—was not available in 1983.

Because Lago Vista did not provide sewer to the Poe's property within the 4 ½ years required by TEX. LOC. GOV'T CODE §43.056 and the service plan, Bobby Poe filed for disannexation under §43.141. *Poe v. The City of Lago Vista* Cause No. D-1-GN-05-002184, 345th District Travis County (August 2, 2006). Judge Yelenosky ordered the area disannexed and "ordered the return of taxes paid by the plaintiffs." [9] This case was not appealed. (3 CR 1089) (3 CR 1303-1307) (1 RR 27-29).

In 2002 after receiving a petition from annexed residents, the San Marcos City Council ordered 330 homes disannexed because the city failed to provide full

---

[9] Certified Opinion *Poe v. City of Lago Vista* Cause No. D-1-GN-05-002184, 345th District Travis County (August 2, 2006). (Appendix O).

municipal services. This information is in the public domain and can be found at the Austin-American Statesman's website www.statesman.com. (3 CR 1090) (3 RR 25-27).

In 2006 the City of Greenville disannexed over 1000 acres after residents submitted a petition requesting disannexation because the City failed to provide the area with the required services. This information is in the public domain and can be found at the Greenville Herald Banner's website www.heraldbanner.com. (3 CR 1090) (1 RR 25-27).

## Conclusion

Appellant has met all the requirements for disannexation under TEX. LOC. GOV'T CODE §43.141. A valid petition was filed with the municipality on September 1, 2009. (3 CR 1096-1132). More than 60 days have passed since the City received the petition. The Bryan City Council, by a vote of 5-2, denied the request on October 27, 2009. (3 CR 1085). Appellant is one of the signers of the petition (3 CR 1085) (3 CR 1111). The Bryan City Council adopted Ordinance NO. 1175 on July 27, 1999 which annexed over 6000 acres including Area 6A-1. (3 CR 1085). It has been more than 4 ½ years from the date of the annexation, and

the City has failed to provide, in good faith or under its service plan, full municipal services to Area 6A-1. On February 13, 2012, appellant filed for disannexation pursuant to §43.141 (1 CR 7) ( CR 1085) (1 RR 67-68). This lawsuit is a snapshot of Area 6A-1 on February 13, 2013.

As of the filing of this lawsuit, the City of Bryan has failed to perform its obligations in accordance with the service plan or failed to perform in good faith. The businesses and residents of Area 6A-1 do not have, as required by the service plan, the same type, kind and quality of services currently enjoyed by the citizens of Bryan who reside in areas with similar physical and development characteristics. The businesses and residents of Area 6A-1 do not have sewer service as do similar areas as proven by the Discovery information and the map showing sanitary sewer lines throughout the city. (3 CR 1134-1256) (3 CR 1265) (Appendix D, L). The businesses and residents of Area 6A-1 do not have fire suppression with fire hydrants as do similar areas as proven by the Discovery information and the map showing fire hydrants throughout the city (3 CR 1134-1256) (3 CR 1265) (Appendix E, M). The businesses and residents of Area 6A-1 do not have regular and routine preventive police patrols as proven by the 130 continuous hours of video in 2005 and the 100 hours of observation (and video) in

29

2015. (3 CR 1084-1086) (3 CR 1258) (1 RR 14-16).

On the issue of providing services to annexed areas, the City has blatantly disregarded its own service plan, the letter of the law, and the spirit of the law. Therefore, Area 6A-1 is ripe for disannexation as a matter of law.

## Prayer

Wherefore, premises considered, Appellant, Karen Hall, respectfully prays for the following relief:

(1)  that the judgment of the trial court be reversed and render judgment that Area 6A-1 be disannexed from the City of Bryan for a period of ten (10) years pursuant to TEX. LOC. GOV'T CODE §43.141(c),

(2)  order the landowners be refunded the property taxes and fees collected by the City during the period that the area was part of the City pursuant to TEX. LOC. GOV'T CODE §43.148,

(3)  The Plaintiff recover the costs of this suit, and such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

Karen Hall
P.O. Box 13
Kurten, TX 77862
979/589-2920

Karen Hall, *pro se*

30

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served by CMRRR on this __23rd__ day of June 2016 as follows:


Ryan Henry
1380 Pantheon Way, Ste. 110
San Antonio, TX 78232

_Karen Hall_
Karen Hall

31

# APPENDIX

Appendix A.                    January 28, 2016 Order